IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 07-cv-01648-RPM

GINA JONES,

                    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOULDER,
COLORADO,
JOE PELLE, BOULDER COUNTY SHERIFF, individually and in his official capacity;
JACKIE JORISSEN, FORMER MEDICAL ADMINISTRATOR FOR THE BOULDER
COUNTY JAIL, individually and in her official capacity,

                    Defendants.

---

MEMORANDUM OPINION AND ORDER

---

Gina Jones seeks damages under 42 U.S.C. § 1983, claiming that the protection of her freedoms provided by the First and Fourteenth Amendments to the United States Constitution were infringed while she was employed as a registered nurse in the medical unit in the Boulder County Jail.  She claims against her former supervisor, Jackie Jorissen, individually, for attempting to restrict the plaintiff's freedom of speech and freedom of association by threatening termination of her employment and harassment in retaliation for the exercise of those freedoms.  She also claims against her employer, the Sheriff of Boulder County, for failure to train and supervise his employees and Ms. Jones contends that the County Commissioners and county administrative officials sought to prevent union organization of county employees.  After completion of discovery, the defendants moved for summary judgment of dismissal of these claims and a related claim of discharge of a public employee in violation of established public policy of the State of Colorado.

The undisputed facts are as follows:

Gina Jones was hired as a nurse at the Boulder County Jail in February, 2001. She began work as an hourly employee and changed to a part-time employee on October 26, 2002.

On March 20, 2006, Ms. Jones wrote to Jackie Jorissen, the Jail Medical Unit Administrator, her supervisor, informing that Ms. Jones was resigning as of April 1, 2006, to be caregiver for her mother who was moving to Colorado.  Ms. Jones advised that she would like to remain hourly for the jail.  (Exhibit E)

On May 2, 2006, Ms. Jones wrote to Ms. Jorissen resigning from her hourly position to take care of her mother.  (Exhibit R)

Ms. Jones returned to the jail as an hourly paid nurse in July, 2006.

Jackie Jorissen was the subject of an investigation conducted by Mountain States Employers Council in May and June, 2006.  Following the report of the investigation (Exhibit 9), Ms. Jorissen's employment ended on June 22, 2006.

The Jail Medical Unit Administrator's position was posted as a vacant position on July 24, 2006.

Ms. Jones applied for the position and was interviewed by a panel consisting of Larry Hank, Jail Division Chief, Tom Shomaker, Under Sheriff, Peggy Jackson, Human Resources Director, Bruce Haas, Jail Administrative Commander and Molly Arkin, a nurse.

The interview committee selected Revada Farnsworth and she was employed on October 2, 2006.

On December 4, 2006, Ms. Farnsworth conducted a performance counseling session with Gina Jones on issues regarding her venting anger at not being hired for the administrator position, for going through files and documents in the administrator's office and for keeping files on co-workers.  (Exhibit HH).

On December 5, 2006, Ms. Jones wrote to Ms. Farnsworth to inform that Ms. Jones was resigning effective immediately.  (Exhibit SS).

There was ongoing unrest in the Health Services Department of the jail for several years with respect to the supervision and management of the nursing staff by Ms. Jorissen who had been with the unit for more than 20 years.  During 2005, some county employees began organizing activities to join with the Service Employees International Union (SEIU).  There were some in the administrative staff positions who demonstrated hostility toward these organizing activities.  Gina Jones and another jail nurse, Sue Franta, were vocal advocates for union organization.  Concurrently, the county considered contracting out the nursing services for the jail and developed a request for proposal as a preliminary step toward that objective.  Ms. Jones and Ms. Franta were vocal opponents of that proposed policy.  They and others discussed their views with County Commissioners Pearlman and Toor and Ms. Jones appeared at several meetings of the Board of County Commissioners and expressed her views.

On December 5, 2005, Ms. Jones and Jackie Jorissen had a confrontational discussion concerning these issues.

Ms. Jones made notes of that conversation immediately afterward, (Exhibit I). According to Ms. Jones and her notes, Ms. Jorissen angrily accused the plaintiff of undermining the department, going outside the chain of command, and saying that if

3

she continued to go to Commissioner meetings Ms. Jones' job would be in jeopardy.

That comment was reported to Commissioner Toor by an SEIU representative by e-mail

on December 6, 2005.  Commissioner Toor communicated that information to Sheriff

Pelle on the same day and the Sheriff forwarded that message on to Bruce Hass, the

Jail Commander.   (Exhibit K).  A public hearing on the request for proposal of

outsourcing the nursing services was discussed at a Commissioners' meeting on

December 13, 2005.

In January, 2006, a decision was made to not proceed with that proposal and the

Sheriff advised the nursing staff that there would be no such proposal for at least one

year.

On February 23, 2006, the Commissioners sent a message to all county

employees that they were free to discuss forming a union during non-work hours and off

premises.

Ms. Jones contends that her resignation on December 5, 2006, was a

constructive discharge because of harassment motivated by retaliation for her advocacy

for a union and in opposition to the outsourcing proposal.  In analyzing the plaintiff's

claims based on the First Amendment, the Court is guided by the direction given by the

Tenth Circuit Court of Appeals in *Brammer-Hoelter v. Twin Peaks Charter Academy*,

492 F.3d 1192, 1202-1203 (10th Cir. 2007) as follows:

> After the Supreme Court's recent decision in *Garcetti,* it is apparent
> that the "*Pickering"* analysis of freedom of speech retaliation claims is a
> five step inquiry which we now refer to as the "*Garcetti/Pickering"* analysis.
> (Footnote 4 omitted).  First, the court must determine whether the
> employee speaks "pursuant to [his] official duties."  *Garcetti,* 126 S.Ct. at
> 1960; *see also Mills,* 452 F.3d at 647 ("*Garcetti* . . . holds that before
> asking whether the subject-matter of particular speech is a topic of public
> concern, the court must decide whether the plaintiff was speaking 'as a

citizen'. . . ."). If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti,* 126 S.Ct. at 1960. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. *See Green v. Bd. of County Commr's,* 472 F.3d 794, 798 (10th Cir. 2007); *Mills,* 452 F.3d at 647-48. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer." *Casey v. W. Las Vega Indep. Sch. Dist.,* 473 F.3d 1323, 1327 (19th Cir. 2007). Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a "substantial factor or a motivating factor in [a] detrimental employment decision.: *Lybrook,* 232 F.3d at 1338 (internal quotation marks omitted). Finally, if the employee establishes that his speech was such a factor, "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." *Id* at 1339 (internal quotation marks omitted). The first three steps are to be resolved by the district court, while the last two are ordinarily for the trier of fact. *See Cragg v. City of Osawatomie,* 1423 F.3d 1343, 1346 (10th Cir. 1998).

The defendants assert that Ms. Jones was speaking as a jail nurse on matters that concern her continued employment, making her statements unprotected speech because she was not speaking as a citizen and not addressing matters of public concern. That argument is without merit. Ms. Jones' statements are much like those of the teachers in *Bammer-Hoelter*. While Ms. Jones had a personal interest in keeping her job, she was not speaking in the performance of her official duties as a nurse. To the contrary, she was criticized by Ms. Jorissen for inappropriately seeming to represent the medical staff both with respect to unionization and outsourcing. Those two subjects were matters of public concern to the entire community as reflected by the fact that the two issues were policy matters to be decided by their elected representatives, the county commissioners. County employees do not lose their status as citizens free to

discuss the appropriateness of a policy that affects their livelihood.

The third factor in the analysis is whether the governmental interest of the county and the Sheriff in maintaining an efficient and disciplined work environment outweigh the employee's interest in public expression of her views.  There is nothing presented by the defendants to support the suggestion that the activities of Ms. Jones and Ms. Franta in speaking to the county commissioners was disruptive to the operation of the jail staff in any manner sufficient to outweigh the protected interest in speaking on matters of public concern.  Ms. Jorissen expressed such an opinion in her admonishment to Ms. Jones on December 5, 2005.  What is shown, however, by the report of investigation conducted by Mountain States Employers Council, was that Ms. Jorissen's failures of adequate supervision of the nursing staff was disruptive and unsettling.  Notably, the investigation report did not attribute any disruption resulting from Ms. Jones' activities.

As noted by the Tenth Circuit Court of Appeals, the question whether the employee has shown that her speech was a substantial factor or motivating factor in some detrimental employment decision is a factual issue, normally determined by a jury. Addressing this question under summary judgment requires the Court to consider whether the plaintiff has presented sufficient evidentiary support to submit that issue to a jury.  The plaintiff has failed to show enough available evidence to draw a fair inference that she sustained any adverse employment effect from her exercise of her freedom to speak and associate.  The primary emphasis is on Ms. Jorissen's statement in the December 5, 2005, discussion that may be interpreted as threatening to fire Ms. Jones if she continued to speak out.  The statement is ambiguous and could be

interpreted simply as a caution that local opposition by the nursing staff could have a boomerang effect and contribute to a decision to go forward with contracting out that service.

Taking the plaintiff's view that this was a direct threat designed to chill her speech, the question is whether this comment in itself was a violation of the First Amendment and there is no authority to support that discrete act as being sufficient to give rise to a constitutional tort. The plaintiff's speech was not chilled and she continued her employment until her decision to resign to care for her mother.

The defendants argue that Ms. Jorissen's objectionable comment was not a violation because Ms. Jorissen did not have the authority to terminate the plaintiff's employment. That authority was with the Sheriff as the employer. It is fair, however, to infer that Ms. Jorissen could cause the Sheriff to terminate the employment because the investigative report shows that Ms. Jorissen had caused the termination of the employment of other nurses. The perceived threat could, therefore, be considered a real one. However, that in and of itself is not a sufficient adverse employment action to support any liability.

The plaintiff attempts to support her claim that ultimately she was constructively discharged by complaining of harassment by Ms. Jorissen and some of the Sheriff's administrative staff. She contends that she should have been offered leave under the Family Medical Leave Act because of the need for care for her mother. While it is true that FMLA leave entitlement is not dependent on a specific request or demand for such leave by the employee, there must be a showing that there is such a need before the employer has any obligation to make the offer. *Thorson v. Gemini, Inc.,* 205 F.3rd 370,

381 (8th Cir. 2000).  There is no such showing in the record presented in this case.

The plaintiff also claims that she was not selected for the jail medical staff administrator position in retaliation.  While the interviewing committee included Sheriff's personnel who were aware of the plaintiff's activities, it also included another nurse. The defendants have produced the supporting reasons for the selection of Ms. Farnsworth.  The plaintiff challenges those reasons as pretextual because the reasons given included the failure of the plaintiff to show sufficient supervisory experience, which her resume indicated she had.  The extent of supervisory experience was obviously a matter of importance, given the failure of Ms. Jorissen as shown in the Mountain States report and there is an insufficient basis for inferring that retaliation was a motivating factor in the decision.

Ms. Jones also attributes the performance evaluation and criticism made by Ms. Farnsworth on December 4, 2006, as retaliatory.  There is, however, nothing to indicate that Ms. Farnsworth had any knowledge of the issues that would give rise to her having a retaliatory motive and there is nothing to indicate that Ms. Farnsworth was acting on the instruction or direction of any who did have such knowledge.

In summary, the claim made under § 1983 is dismissed because the plaintiff has failed to support her claim on the first three factors as a matter of law and has not provided sufficient evidentiary support to submit to a jury the other two factors.

The plaintiff also claimed discrimination in violation of public policy reflected in Colorado Criminal Statutes but the evidence is insufficient to support that claim. Assuming that the doctrine of constructive discharge is applicable to this case, the working environment has not shown to be sufficiently hostile that a person in Ms. Jones'

position on December 5, 2006, would find her working conditions to be intolerable.  This was a voluntary resignation.

Pursuant to the foregoing, it is

ORDERED that the defendants' motion for summary judgment is granted and judgment will enter dismissing the plaintiff's claims in this civil action.

Date: July 27th, 2009

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge